[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On August 14, 1998, the Commissioner of Transportation, pursuant to Connecticut General Statutes § 13a-73 (b) and 13a-73 (f), filed with the Clerk of the Superior Court for the Judicial District of Ansonia-Milford a Notice of Condemnation and
Assessment of Damages for real property owned by Dominick Farina, Trustee and located at Present Frontage Road in the Town of Orange.
The taking terminates the owner's rights of access directly to and from Present Frontage Road, said access being specifically the southeasterly street line of Present Frontage Road.
The purpose of the taking was for the layout, alteration, extension, widening, change of grade and improvement of the highway commonly known as Present Frontage Road.
The assessment of damages as filed by the Commissioner with the Clerk of the Court was in the amount of $148,500.00. The applicant filed a motion for payment of the deposit, which was paid on August 15, 1998.
Subsequently on October 14, 1998, the property owner made his Application for Reassessment of the Damages. Pursuant to Connecticut General Statutes § 13a-76, the matter was referred to the undersigned Judge Trial Referee, who has heard the testimony of the various witnesses, viewed the premises and makes the following findings.
"The single objective of an eminent domain proceeding is to 1insure that the property owner shall receive and that the State shall only be required to pay the just compensation which the Fundamental law promises." Thomaston v. Ives, 156 Conn. 166, 174, 239 A.2d 515 (1968);Bruno v. East Hartford, 4 Conn. App. 271, 274.
The Fifth Amendment to the Constitution of the United States and Article First, Section 11 of the Constitution of the State of Connecticut direct that the property of no person shall be taken for public use without just compensation. Section 13a-73 (b) authorizes such a taking by the Commissioner of Transportation and directs that the owner shall be paid by the State for "all" damages. CT Page 9285
"It is the court's duty to award just compensation to any person whose property is taken for public use. The usual measure of just compensation is the fair market value or the price that would probably result from fair negotiations between a willing seller and a willing buyer, taking into account all the factors including the highest and best or most advantageous use, weighing and evaluating the circumstances, the evidence, the opinions expressed by the witnesses and considering the use to which the premises have been devoted and which may have enhanced the value." (Internal citations omitted.) Wronoski v. Redevelopment Agency,180 Conn. 579, 585.
Our Supreme Court has said that, just compensation means a fair equivalent in money for the property taken as nearly as its nature will permit; Waterbury v. Platt Bros. Co., 76 Conn. 435, 440, 56 A. 856;New Haven Water Co. v. Russell, supra,368; and fair market value is ordinarily the means of compensation, although this is not necessarily so. State v. Suffield and Thompsonville Bridge Co., 82 Conn. 460, 467,74 A. 775. . . . In United States v. Nahaut, 153 F. 520, 82 C.C.A. 470, . . . the court pointed out [p. 5211 that the question was to be decided upon equitable principles. . . . "The paramount law intends that the owner shall be put in as good condition pecuniarily by a just compensation as he would have been if the property had not been taken. . . ." The question of just compensation contemplated by the Constitution is more an equitable question than a strictly legal or technical one and it also said [p. 524] "The primary question, of course, is just compensation and this means full equivalent for the property taken." Winchester v. Cox,129 Conn. 106, 114.
"In a condemnation case, the Referee is more than a trier of facts or an arbiter of differing opinions of witnesses. `He is charged by the General Statutes and the directions of this court with the duty of making an independent determination of value and fair compensation in the light of all the circumstances, the evidence, his general knowledge, and his viewing of the premises.'" Brown v. Ives, 171 Conn. 231, 239; Birminghamv. Ives, 163 Conn. 12, 21.
The taking of the rights of access to and from the subject property constitute a partial taking. "Damages recoverable for a partial taking are ordinarily measured by determining the difference between the market value of the whole tract as it lay before the taking and the market value of what remained of it thereafter, taking into consideration the changes contemplated in the improvement and those which are so possible of occurrence in the future that they may reasonably be held to affect market value." Cappiello v. Commissioner of Transportation,203 Conn. 675, 679; D'Addario v. Commissioner of Transportation, CT Page 9286180 Conn. 355, 365, 429 A.2d 890 (1980)
"Where only a portion of a tract is taken for public use, the award will include the value of the part taken as well as any damages visited upon the remainder as a result of the taking." Laurel, Inc. v. Commissioner ofTransportation, 180 Conn. 11, 37. (Internal citations omitted.)
"In determining the market value of the remainder after a partial taking, we have said that `it is proper for the trier to consider all elements which are a natural and proximate result of the taking and which could legitimately affect the price a prospective purchaser would pay for the land.'" Bauer v. Ives, supra, 236.
The subject property is located in a light industrial zone with the Present Frontage Road bordering the northerly entrance ramp to Interstate 95. While the present owner of the subject uses the property for farming and as his residence, the highest and best use of the property at the time of the taking would be for a light industrial use.
With the rights of access to the property having been taken, the property no longer has a public means of access. Presently, the only means of access to and from the property is by way of an easement for ingress and egress along the southerly boundary. With no access to Frontage Road, the property no longer borders a public street or highway and does not comply with the zoning regulations for a light industrial use, which requires 50 feet on a public highway. See Section 26.3.3 of the Orange Zoning Regulations. As it stands, the property is nonconforming and could not be used for industrial purposes without some type of variance being granted. The highest and best use of the remaining property after the taking is no longer for a light industrial use but rather a residential/farming use, i.e., its present use.
The court, after hearing the testimony of the various witnesses and the evidence presented as well as its viewing of the subject property and its surroundings, reaches the following conclusions. It is the court's opinion that the property is superior to the comparables offered by both parties due to its location immediately adjacent to the northbound entrance to Interstate 95. Although the property is not accessed by way of Marsh Hill Road, nevertheless, Marsh Hill Road is a major north south artery. After the taking, the elimination of any public access has a major impact on its value. Access is now limited to the use of the easement along the southerly boundary of the subject property. The State appears to think that the use of that easement would allow the appellant to maintain the property for industrial use. This is contrary to the opinion of officials of the Town of Orange who maintain that the zoning requirement for a light industrial zone #2 requires 50 feet of frontage CT Page 9287 on a public highway. The easement would contain only the rights contained in the grant itself, namely ingress and egress. The court is of the opinion that the value of the property prior to the taking is in excess of that claimed by the State but less than that expressed by the owner. The court finds the value of the property prior to the taking to be $512,881.00.
The taking has had a major impact on the value of the property, severely limiting its future use. The court finds the value after the taking to be $176,925.00. The damages, therefore, amount to $335,956.00. The Commissioner has paid to the Clerk of the Court the sum of $148,500.00, therefore judgment may enter in the amount of $187,456.00.
An appraisal fee is awarded the applicant in the amount of $7,500.00
The Court
 By_____________________ CURRAN, JUDGE