LUCA J. CAPPIELLO ET AL. *v.* COMMISSIONER
OF TRANSPORTATION
(12974)

PETERS, C. J., HEALEY, SHEA, SANTANIELLO and SCHALLER, JS.

Argued March 10—decision released June 2, 1987

*Frank W. Murphy,* with whom, on the brief, was *Herbert G. Feuerhake,* for the appellants (plaintiffs).

*Robert T. Morrin,* assistant attorney general, with whom, on the brief, was *Joseph I. Lieberman,* attorney general, for the appellee (defendant).

SCHALLER, J. The defendant, the commissioner of transportation, condemned a portion of the plaintiffs' property and certain slope rights, located in Trumbull, and assessed damages in the amount of $1500. Claiming that the award was inadequate, the plaintiffs appealed to the Superior Court where the matter was referred to a state trial referee who fixed the damages at $2940. From the judgment rendered, the plaintiffs appealed to the Appellate Court. Pursuant to § 4023 (formerly § 3004A) of the rules of practice, the plaintiffs' appeal was transferred to this court.

The pertinent facts may be summarized as follows: In 1974, the defendant acquired, by eminent domain, a portion of a parcel of land and certain slope rights from Albino Picarazzi, the plaintiffs' predecessor in title. Prior to that taking, the defendant applied for, and was granted, two variances, the second being necessary to correct certain errors in specifications contained in the first. The variances permitted, inter alia, a reduction in lot area to a minimum of 40,792 square feet. A map, submitted by the defendant in connection

with the 1974 taking, erroneously depicted the house on the lot to be located more than 50 feet from the street line, thus making the house appear to conform to building setback requirements.

In 1976, the plaintiffs purchased from Picarazzi what remained of his parcel following the 1974 taking, subject to the slope rights taken by the state. In September, 1979, the defendant began construction in the area in front of the plaintiffs' property. It was subsequently discovered that part of that construction was taking place on the plaintiffs' property and that the plaintiffs' house was only 36.6 feet from the road, not the fifty or more feet indicated on the 1974 taking map, thus violating the applicable setback requirements. This discovery necessitated another taking which, by stipulation of the parties, occurred in September, 1979. The 1979 taking, which totaled 349 square feet, is the subject of the present appeal.

The plaintiffs contended at trial that the award of damages was inadequate, that the 1979 taking rendered their property in violation of the area and setback requirements of the Trumbull zoning regulations and, because no variance had been obtained by the defendant in connection with that taking, the defendant was required under General Statutes § 48-24 to reimburse them for the entire parcel. The trial referee found that the 1979 taking had not caused a nonconformity because, regarding setback requirements, the property had been rendered nonconforming by the 1974 taking and, regarding area requirements, the property, even without the portion taken in 1979, was conforming. The trial referee found, nonetheless, that the initial award of damages was inadequate and increased it almost twofold. On the basis of these findings, the referee, exercising the powers of Superior Court, ruled that a taking

of the entire parcel had not occurred in 1979 and that the plaintiffs' compensation for the partial taking should be set at $2940.

The plaintiffs' initial claim is that the referee erred in determining that a total taking had not occurred under General Statutes § 48-24.[1]

On appeal, it is the function of this court to determine whether the decision of the trial court is clearly erroneous. See Practice Book § 4061 (formerly § 3060D); *Duksa* v. *Middletown,* 192 Conn. 191, 205, 472 A.2d 1 (1984). Contrary to the plaintiffs' assertion, the referee did not conclude that General Statutes § 48-24 was inapplicable to setback violations. As the memorandum of decision, dated March 1, 1985, indicates, the referee concluded only that the taking in 1979 had not rendered the plaintiffs' property nonconforming. This conclusion is supported by the evidence and, therefore, must remain undisturbed. *J & J Enterprises of Lenoir, Inc.* v. *Shaw,* 190 Conn. 321, 322, 460 A.2d 1283 (1983); *Turgeon* v. *Turgeon,* 190 Conn. 269, 276, 460 A.2d 1260 (1983). The variances, approved prior to the 1974 taking, permitted a nonconforming minimum lot area of 40,792 square feet. The area of the plaintiffs' parcel, following the 1979 taking, totaled approximately 41,493 square feet and thus conformed to lot area requirements. The record reveals that the plaintiffs' house was

---

[1] "[General Statutes] Sec. 48-24. CONDEMNING AUTHORITY TO OBTAIN ZONING VARIANCE FOR PORTION OF PROPERTY NOT TAKEN OR TAKE ENTIRE UNIT. A condemning authority, if acquiring less than the total amount of a single unit of contiguous property, shall, if the remaining portion of such property does not conform to the area requirements of existing zoning regulations, obtain a zoning variance for such remaining portion of property from the local zoning board of appeals before condemning any portion of such property. If such variance is not obtained prior to the taking by the condemning authority, the owner or owners of such single unit of contiguous property shall be reimbursed for the total amount of such unit and the condemning authority shall take title in fee simple to the entire unit of contiguous property."

36.6 feet from the road at the time they purchased the parcel from Mr. Picarazzi. The 1979 taking had no effect upon the setback and, thus, did not create a nonconformity in that regard. Consequently, the referee correctly concluded that General Statutes § 48-24 was inapplicable because the 1979 taking did not create a nonconformity.

The plaintiffs next claim that they are entitled to relief under § 48-24 by virtue of their reliance upon the erroneous taking map, prepared and filed by the state in connection with the 1974 taking. It is fundamental in our law that a plaintiff may rely only on that which has been alleged. See *Matthews* v. *F.M.C. Corporation,* 190 Conn. 700, 705, 462 A.2d 376 (1983), and cases cited therein. Because the plaintiffs failed to raise an allegation of reliance in their complaint, we need not address that claim.

The plaintiffs also claim that the referee erred in his method of assessing damages by failing to consider the consequential damage to the property caused by the nonconformity with the setback requirements of the zoning regulations and by failing to award damages based upon the defendant's interference with the use and enjoyment of their property.

Damages recoverable for a partial taking are ordinarily measured by determining " 'the difference between the market value of the whole tract as it lay before the taking and the market value of what remained of it thereafter, taking into consideration the changes contemplated in the improvement and those which are so possible of occurrence in the future that they may reasonably be held to affect market value.' " *D'Addario* v. *Commissioner of Transportation,* 180 Conn. 355, 365, 429 A.2d 890 (1980), quoting *Lefebvre* v. *Cox,* 129 Conn. 262, 265, 28 A.2d 5 (1942). Valuation is a matter of fact to be determined by the trier's independent

judgment. *D'Addario* v. *Commissioner of Transportation,* supra, 369. In determining fair market value, the trier may select the method of valuation most appropriate to the case before it; *Laurel, Inc.* v. *Commissioner of Transportation,* 180 Conn. 11, 37–38, 428 A.2d 789 (1980); and " 'has the right to accept so much of the testimony of the experts and the recognized appraisal methods which they employed as he finds applicable; his determination is reviewable only if he misapplies, overlooks, or gives a wrong or improper effect to any test or consideration which it was his duty to regard.' " *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221, 435 A.2d 24 (1980), quoting *Greenfield Development Co.* v. *Wood,* 172 Conn. 446, 451, 374 A.2d 1084 (1977). On appeal, it is the function of this court to determine whether the decision of the trial court is clearly erroneous. See Practice Book § 4061 (formerly § 3060D).

The plaintiffs' claim that the referee erroneously failed to consider the setback nonconformity as a compensable consequential damage is without merit. The referee correctly concluded that the nonconformity with the zoning regulations was not a consequence of the 1979 taking. The plaintiffs' claim that the referee erred in failing to award damages for the defendant's interference with the use and enjoyment of their property is likewise without merit. The plaintiffs were awarded $2940 for the taking of 349 square feet, or approximately .008 acres of land. This rate of compensation exceeds, by more than three times, the highest value placed upon the entire parcel and the dwelling, by any appraiser who testified. Moreover, it is precisely the amount of damages testified to by the plaintiffs' appraiser. The rate of compensation strongly suggests that the trier did not overlook any damage caused by the defendant's construction activities. There is nothing to show that the referee, in calculating damages,

misapplied or overlooked any consideration which he was duty-bound to regard. *Pandolphe's Auto Parts, Inc.* v. *Manchester,* supra; *Budney* v. *Ives,* 156 Conn. 83, 92, 239 A.2d 482 (1968).

The plaintiffs' final claim is that the referee erred in excluding evidence proffered by their appraiser which calculated damages based upon, inter alia, the state's mapping error in 1974 and the nonconformity with the setback requirements of the zoning regulations. Damages, sustained in a taking by eminent domain, are to be measured as of the date of the taking. *Textron, Inc.* v. *Commissioner of Transportation,* 176 Conn. 264, 267, 407 A.2d 946 (1978); *Lynch* v. *West Hartford,* 167 Conn. 67, 74, 355 A.2d 42 (1974). "[The] principles of Connecticut law on the assessment of damages for a partial taking reflect the judicial philosophy that just compensation requires that the condemnee shall be put in as good a condition pecuniarily as he would have been in had the property not been taken." *Laurel, Inc.* v. *Commissioner of Transportation,* supra, 37; *Meriden* v. *Ives,* 165 Conn. 768, 773, 345 A.2d 13 (1974); *Slavitt* v. *Ives,* 163 Conn. 198, 209, 303 A.2d 13 (1972). The referee need not consider elements of damage that were not " 'a necessary, natural or proximate result of the taking . . . .' " *Budney* v. *Ives,* supra, 88. The referee properly sustained the objection to the admission of the report of the plaintiff's appraiser that included damages based upon the 1974 mapping error and the nonconformity with the zoning regulations.

We have concluded that the referee correctly determined that the nonconformity with the setback requirements existed prior to the taking in 1979 and, thus, was not caused thereby. Had the taking in 1979 never occurred, the nonconformity would, nevertheless, have continued to exist and have remained unaffected. Consequently, the referee properly excluded from consider-

ation evidence of damages that included an assessment of the effect of the nonconformity. See *Laurel, Inc.* v. *Commissioner of Transportation,* supra; *Textron, Inc.* v. *Commissioner of Transportation,* supra; *Budney* v. *Ives,* supra.

Regarding the exclusion of evidence of damages based, in part, upon the mapping error, the referee properly excluded such evidence because the mapping error had not been pleaded as a basis of relief. See, e.g., *Waterbury Petroleum Products, Inc.* v. *Canaan Oil & Fuel Co.,* 193 Conn. 208, 223–24 n.16, 477 A.2d 988 (1984). Moreover, the mapping error, which occurred in 1974, was not a result of the 1979 taking and, thus, was not a proper element of damages. See *Budney* v. *Ives,* supra.

There is no error.

In this opinion the other justices concurred.