[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, the Commissioner of Transportation of the state of Connecticut (Commissioner), filed a notice of eminent domain proceedings, which includes a taking by condemnation and an assessment of damages, pursuant to General Statutes § 13a-73 (b).[1] The purpose of the taking was to widen the intersection of Glenbrook Road and Courtland Avenue, also known as Route 106, in the city of Stamford. The taking consisted of a triangular area containing 470 square feet at the corner of the intersection, plus a "full and perpetual easement area to slope for the safety of the highway and remove, use or retain excavated material, within an area of 600 square feet." The notice was later amended on July 4, 2000 to assess damages for the taking at $6,000. September 9, 1998 was the taking day.
The property affected by the Commissioner's condemnation is located at 445 Courtland Avenue and contains .238 acres or 10,376 square feet. The property is owned by the defendants, Jeffrey M. Koffler and Ruth Alperson, and has a single family dwelling and a two car attached garage.[2] The property is a corner lot and runs along Glenbrook Road for approximately 130 feet and along Courtland Avenue for about 80 feet. By taking the defendants' property, the Commissioner added one additional driving lane on each side of the intersection. The taking was at the corner and ran approximately 70 feet along Glenbrook Road and 45 feet along Courtland Avenue.
The defendants claim to be aggrieved by the Commissioner's action, and have filed an application as authorized by General Statutes § 13a-76
for reassessment of the damages.[3] The undersigned conducted a hearing in which testimony was given by the appraisers for each of the parties, various exhibits were received in evidence and the court viewed the subject property in the company of counsel as required by General Statutes § 13a-76. CT Page 12716
Certain well established principles apply to the taking of property by eminent domain. The fifth amendment to the United States constitution provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const., amend. V. Similarly, article first, § 11, of the Connecticut constitution also provides that "[t]he property of no person shall be taken for public use, without just compensation therefor."
Pursuant to General Statutes § 13a-73 (b), in an eminent domain proceeding, the owners of such land shall be paid by the state for all "damages." "The single objective of [an eminent domain] proceeding is to ensure that a property owner shall receive, and that the State shall only be required to pay, the just compensation which the fundamental law promises the owner for property which the State has seen fit to take for public use." Thomaston v. Ives, 156 Conn. 166, 174, 239 A.2d 515 (1968).
The taking that occurred in this case consisted of a partial taking. "Damages recoverable for a partial taking are ordinarily measured by determining the difference between the market value of the whole tract as it lay before the taking and the market value of what remained of it thereafter, taking into consideration the changes contemplated in the improvement and those which are so possible of occurrence in the future that they may reasonably be held to affect market value." Cappiello v.Commissioner of Transportation, 203 Conn. 675, 679, 525 A.2d 1348
(1987); D'Addario v. Commissioner of Transportation, 180 Conn. 355, 365,429 A.2d 890 (1980).
"Where only a portion of a tract is taken for public use, the award will include the value of the part taken as well as any damages visited upon the remainder as a result of the taking." (Internal citations omitted.) Laurel, Inc. v. Commissioner of Transportation, 180 Conn. 11,37, 428 A.2d 789 (1980). "In determining the market value of the remainder after a partial taking, we have said that it is proper for the trier to consider all elements which are a natural and proximate result of the taking and which could legitimately affect the price a prospective purchaser would pay for the land." (Internal citations omitted.) Bowen v.Ives, 171 Conn. 231, 236, 368 A.2d 82 (1976).
The role of this court in an appeal in an application for reassessment in a condemnation case is more than an arbitrator of differing opinions of witnesses. The court must make an independent determination of value and fair compensation in light of all the circumstances, the evidence, the court's general knowledge and the viewing of the premises. The court's objective is to give the property owner, as nearly as possible, a fair equivalent in money as just compensation for the property taken. CT Page 12717Alemany v. Commissioner of Transportation, 215 Conn. 437, 444, 576 A.2d 503
(1990); Feigenbaum v. Waterbury, 20 Conn. App. 148, 153-154, 565 A.2d 5
(1989).
Valuation is a matter of fact to be determined by the trier's independent judgment. D'Addario v. Commissioner of Transportation, supra, 180 Conn. 369. In determining fair market value, the trier may select the method of valuation most appropriate to the case before it;Laurel, Inc. v. Commissioner of Transportation, supra, 180 Conn. 37-38; and "has the right to accept so much of the testimony of the experts and the recognized appraisal methods which they employed as he finds applicable." (Citation omitted.) Pandolphe's Auto Parts, Inc. v.Manchester, 181 Conn. 217, 221, 435 A.2d 24 (1980).
The plaintiffs appraiser, Walter J. Kloss, used the sales comparison method for three unimproved lots to calculate damages as $4,500, although an additional $1,500 was added subsequently. These three sales took place in the summer of 1997 for prices ranging between $73,000 and $74,500. Adjustments were then made based on the size of the subject property and the existence of a 14 inch maple tree which was destroyed as a result of the taking. Mr. Kloss indicated that the value of the parcel before the taking was $74,000. After the taking, this appraiser stated that the value was $69,500, a difference of $4,500. This figure was further broken down into $3,000 for loss of the land, $1,000 for the slope easement and $500 for the loss of the maple tree. The plaintiff's appraiser valued only the land actually taken from the defendants, plus the loss of the tree and the value of the slope rights, and concluded that the taking had no impact on the remainder of the property. "The land loss does not effect the utility of the property." Hence, Mr. Kloss did not recommend the awarding of severance damages.
The defendants' appraiser, Vincent J. Castiglia, submitted a written appraisal report and testified that the monetary damages sustained by the defendant property owners was $36,000 based on his opinion that the fair market value of the defendants' property before the taking was $265,000 and $230,000 thereafter. This appraiser used three sales in Stamford occurring between October, 1997 and September, 1998, on Hope Street and Strawberry Avenue, for $232,500, $325,000 and $245,000. After certain adjustments for location, size, age of house, gross living area, utilities, garages and fireplaces, and the flow of traffic, which was described as "heavy" at the subject premises, this appraiser determined that the adjusted fair market value was $224,500, 211,000 and $250,600 for the three comparables. Therefore, the "before" value for the subject premises was $265,000, and the "after" value was $230,000, a difference of $36,000. CT Page 12718
The defendants' appraiser followed our Connecticut law in the case of a partial taking by analyzing the impact on the remainder of the property. "Where only a portion of a party's property is taken, the landowner is. entitled not only to compensation for the value of the property taken, but also to severance damages for the diminution in the value of the landowner's remaining property that the severance of a portion of the property causes." Alemany v. Commissioner of Transportation, supra,215 Conn. 444.
The rationale for the subject property having a decreased value after the taking reflects the negative impact on the defendants' remaining property because of the exercise of the Commissioner's power of eminent domain. This point was aptly summarized by the defendants' appraiser in these words: "These road changes have undoubtedly increased the amount of automobile and truck traffic particularly at the intersection of Courtland Avenue and Glenbrook Road," which in turn "decreas[ed] the marketability of the property in close proximity to this intersection."
More specifically, this appraiser stated that the taking brought the traffic "much closer to the improvements on the site amplifying the noise nuisance." This court believes that the Commissioner's appraiser was correct in determining the value of the property taken and the slope rights, but should have recommended the award of severance damages reflecting the closer proximity of the road to the dwelling on the defendants' property. The amount of such damages appears to the undersigned to be a rather subjective matter. How much less would a willing buyer pay to the defendant property owners because the road was now somewhere between 5.3 feet and 7 feet closer to the house is not an easy question. The suggestion that $36,000 is the answer seems high to this court because although the traffic is somewhat closer to the house and hence noisier and there may well be increased traffic because of the improvements to the intersection, nevertheless $18,000 strikes the undersigned as a more realistic figure. This results in an award of $6,000 for the land taken, plus $18,000 for severance damages, a total of $24,000.
In terms of the awarding of interest to the defendants, after reviewing all of the testimony and the exhibits in this case, and in light of the amount of compensation paid into court upon the taking by the Commissioner, and considering the ultimate award of this court, the court finds a fair and reasonable rate of interest to be applied to the balance due the property owners is six percent (6%). Furthermore, in light of the court's review of the entire file and in accordance with General Statutes § 13a-76, the court awards a reasonable appraisal fee to the CT Page 12719 defendant property owners in the amount of $1,750, as a further element of just compensation.
Judgment may therefore enter in favor of the defendant property owners to recover from the Commissioner $24,000, less $6,000, the amount deposited with the court by the plaintiff Commissioner and withdrawn by the owners, plus interest on said balance at six percent (6%) per year, an appraisal fee of $1,750, and court costs as taxed by the clerk of this court in accordance with General Statutes § 13a-77.
So Ordered.
Dated at Stamford, Connecticut this 7th day of October, 2002.
William B. Lewis, Judge (T.R.)